UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| WILLIAM EARL HARPER, | § |
| | § |
| Plaintiff, | § |
| VS. | § CIVIL ACTION NO. G-09-124 |
| | § |
| JULIA WARD, *et al*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM AND ORDER OF DISMISSAL

William Harper, (TDCJ # 485425) an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division, (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. After screening the complaint under 28 U.S.C. § 1915A, service of process was ordered on the defendants by the Honorable Lynn N. Hughes. Defendants answered with a motion for summary judgment. (Doc. # 7). Harper has not filed a response. On September 3, 2009, the case was transferred to this court. After considering the pleadings, exhibits, the summary judgment record and the applicable law, the Court will grant the defendants' summary judgment motion and dismiss this case for the reasons that follow.

**I.   BACKGROUND**

Harper is currently incarcerated in the TDCJ-CID at the Ramsey Unit in Rosharon. He sues the following individuals who are employed by the TDCJ at that facility: Julia Ward, Dana McKinley and William McWhorter. The facts of the case are simple. Harper asserts that between February 15, 2008 and January 28, 2009, he suffered from, and sought treatment for, a "bacterial infection/condition of his intestines which causes a discharge and foul odor from his rectum not associated with ordinary flatulence." Harper explains that prior to his transfer to the

Ramsey Unit he was treated for this condition, but since his transfer has been repeatedly told that he suffers from no detectable medical condition and referral to a specialist is therefore not warranted. Harper states that he has filed numerous sick call requests complaining of groin pain and painful and frequent urination but that to date, the defendants have failed to adequately treat his problem and have not referred him to a urologist or other specialist. In addition to groin and rectal pain, Harper's condition has caused him to suffer humiliation and mental anguish.

Harper alleges that Dr. Julia Ward, the physician assigned to the Ramsey Unit, subjected him to deliberate indifference to his serious medical needs by refusing to provide him adequate, necessary and timely medical care and treatment. Dr. Ward in sued in her individual and official capacity.

Defendant Dana McKinley is sued in her individual and official capacity as the Facility Practice Manager at the Ramsey Unit. Harper alleges that McKinley personally deprived him of his civil rights by "subjecting him to deliberate indifference to his serious medical needs by refusing to insure he was provided adequate, necessary and timely medical care and treatment."

Defendant William McWhorter is sued in his individual and official capacity as the Ramsey Cluster Practice Manager. Harper alleges that McWhorter personally deprived him of his civil rights by "subjecting him to deliberate indifference to his serious medical needs by refusing to insure he was provided adequate, necessary and timely medical care and treatment."

## II.   STANDARD OF REVIEW

Defendant's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden

at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons*, *Inc.*, 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88. However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). The nonmovant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003). In the absence of a response, the Court may accept the movants' evidence as undisputed, *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988), and determine whether they have made a *prima facie* showing of their entitlement to summary judgment based upon that undisputed evidence. *Vega v. Parsley*, 700 F.Supp 879, 881 (W.D. Tex. 1988).

### III. DISCUSSION

#### A. Immunity from Official Capacity Claims

It appears that all of the defendants are employed by the State of Texas as TDCJ officers or as health care providers employed by UTMB. The Eleventh Amendment to the United States Constitution bars any claim for monetary relief against them in their official capacities. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against on of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Thus, federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Vogt v. Board of Comm'rs, Orleans Levee Dist.,* 294 F.3d 684, 688 (5th Cir. 2002).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). As instrumentalities of

the state, TDCJ and UTMB are immune from a suit for money damages under the Eleventh Amendment. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998), *cert. denied*, 528 U.S. 851 (1999).

In this case, Harper sues all of the defendants for actions taken during the course of their employment with the State of Texas. To the extent that Harper seeks monetary damages in this case, the Eleventh Amendment bars his claims against all of the defendants listed in the complaint in their official capacity as state employees. It follows that all of the defendants named in the pleadings are entitled to immunity under the Eleventh Amendment from Harper's claims for money damages against them in their official capacity. Accordingly, the defendants are entitled to summary judgment on this issue.

### B.  Qualified Immunity

Under the doctrine of qualified immunity, public officials and employees acting within the scope of their authority are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* ___ U.S. ___, 129 S.Ct. 808, 815 (2009). The Supreme Court has characterized the doctrine as protecting "all but

the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct a two-prong analysis that was established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, ___ U.S. ___, 129 S.Ct. at 817. The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right. *See Scott v. Harris*, 550 U.S. 372 (2007) (citing *Saucier*, 533 U.S. at 201). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id*. (quoting *Saucier*, 533 U.S. at 201). If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving all qualified immunity claims. *Pearson*, 129 S.Ct. at 818. Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. Thus, the "rigid *Saucier* procedure" need not be followed in any particular sequence. *Id*. In this case, the Court

finds it appropriate to determine initially whether a constitutional violation occurred under the traditional two-step procedure established in *Saucier*.

In the case of a qualified immunity defense, the usual summary judgment burden of proof is altered. *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Mitchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Mitchalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof, but must offer more than "mere allegations.") (quotation omitted).

### C. The Summary Judgment Record

Harper claims that the defendants were deliberately indifferent to his serious medical needs. In support of their motion for summary judgment, defendants have attached the following in support of their argument that there are no genuine issues of material fact:

Exhibit A: The Affidavit of Dr. Steven A. Mercado, Assistant Medical Director for the San Antonio District for the UTMB-Correctional Managed Care.

Exhibit B: The Affidavit of Devoriah Nauls, Correctional Clinical Associate at the UTMB-Correctional Managed Care, Health Services Archives; and, 193 pages of Harper's relevant medical records.

> Exhibit C: The Affidavit of Paul Strunk, District Manager of Operations for the Houston District of the UTMB-Correctional Managed Care.

### D. Deliberate Indifference to Serious Medical Needs

Harper alleges that defendants were deliberately indifferent to his serious medical needs because despite the sick call requests that he submitted regarding his intestinal complaints, the defendants failed to adequately treat his condition.

The defendants contend that Harper does not have a serious medical need and has failed to meet the deliberate indifference standard. In their summary judgment motion, the defendants composed a summary of all complaints in Harper's medical records regarding a bacterial infection of his intestines which allegedly caused a discharge and foul odor from his rectum, and, regarding a urinary tract infection. (Doc. # 7, p. 4). The summary also shows all treatment that Harper received related to these complaints. A careful review of Harper's medical records and the other summary judgment evidence supports the defendants' contention that Harper does not have a serious medical need. The summary, supported by the medical records, shows that between February 20, 2008 and February 2, 2009, Harper lodged twenty (20) complaints or sick call requests and was seen or examined by various medical providers for his complaints approximately twenty (20) times. On no occasion did any medical provider find any evidence of an infection, discharge or odor from Harper's rectum. (See Doc. # 7, Exh. A and B). Moreover, Dr. Mercado states in his sworn affidavit that his review of Harper's medical records revealed no evidence of any serious medical need that has gone unattended. "There is no evidence to indicate a bowel disorder, and Ramsey Unit medical providers have never been able to verify Mr. Harper's subjective complaints." ((Doc. # 7, Exh. A). Harper's urinary tract infection was treated with antibiotics. (See Exhibit B).

"Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners,' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). "A prison official violates the Eight Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97 (1976). The Fifth Circuit has stated that the deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dept of Criminal Justice,* 239 F.2d 752, 756 (5th Cir. 2001). The requisite deliberate indifference must rest on facts clearly evincing a defendant's <u>wanton</u> actions. *Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). A showing of deliberate indifference in this context requires the prisoner to demonstrate that prison health care officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical need." *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006). Undisputed evidence of sick calls, examinations, diagnoses, and medication can negate an allegation of deliberate indifference, even if the treatment proves ultimately to be unsuccessful. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977), *cert. denied*, 434 U.S. 864 (1977); *Gobert,* 463 F.3d at 347. A dispute between an inmate and a physician over proper medical care is also not sufficient to state a claim of deliberate indifference unless exceptional circumstances are alleged. *Gobert,* 463 F.3d at 347. Where there are indications of a course of treatment for an inmate's condition, as in the instant case, it is extremely difficult to make a showing of deliberate indifference. The Fifth Circuit has specifically noted that in such situations the only remaining

logical possibility for liability is that the physician fiendishly and deliberately set out to injure rather than benefit the inmate. *Bass*, 550 F.2d at 232. This clearly did not occur in this case.

Harper has wholly failed to present any factual evidence to support his allegation that he suffered a serious medical need, or that his medical complaints were not attended to. In light of Harper's undisputed medical record, the Court concludes, as a matter of law, that Harper did not have a serious medical need. Failing to establish that he had a serious medical need, Harper has failed to plead a violation of a constitutional right under the Eighth Amendment. Harper's claims against the defendants for violation of his Eighth Amendment rights therefore fail as a matter of law.

Harper also claims that his grievances regarding inadequate medical care were improperly investigated and not resolved to his satisfaction. This claim also fails to rise to the level of a constitutional violation. It is well settled that inmates do not have a constitutionally protected right to a grievance procedure; nor do inmates have a right to have their grievances investigated and resolved to their satisfaction. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119 (1977); *see also Sandin v. Conner*, 515 U.S. 472 (1995). Because Harper has failed to allege the deprivation of a substantive right, his claim concerning the investigation and resolution of his grievances are without merit.

## IV.   CONCLUSION

Based on the foregoing, the Court **ORDERS** that the defendant's motion for summary judgment is **GRANTED** and this action is **DISMISSED** with prejudice as frivolous and for failure to state a claim.

All pending motions are **DENIED** as moot.

The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.

SIGNED at Houston, Texas this 12th day of July, 2010.

_____
Kenneth M. Hoyt
United States District Judge